11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Nathaniel Grant Daughtry

Appellant

Vs.                   No.  11-01-00329-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Nathaniel Grant Daughtry of robbery. 
The trial court found the enhancement paragraphs to be true and assessed
appellant=s punishment at 25 years confinement.  We affirm.

In his
first issue on appeal, appellant contends that the evidence is factually
insufficient to support his conviction. 
In order to determine if the evidence is factually sufficient, we must
review all of the evidence in a neutral light and determine whether the
evidence supporting guilt is so weak as to render the conviction clearly wrong
and manifestly unjust or whether the evidence supporting guilt, although
adequate when taken alone, is so greatly outweighed by the overwhelming weight
of contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996).   We review the fact finder=s weighing of the evidence and cannot substitute our judgment for that
of the fact finder.  Cain v. State,
supra; Clewis v. State, supra. 
Due deference must be given to the jury=s determination, particularly concerning the weight and credibility of
the evidence.  Johnson v. State,
23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).  This
court has the authority to disagree with the fact finder=s determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@  Johnson
v. State, supra at 9.








Harmelinda
Patino testified at trial through an interpreter that on April 30, 2001, she
was working at the Wilshire Baptist Church. 
On that day around lunch, Patino was cleaning when she heard a noise
coming from the second floor of the church. 
Patino saw appellant coming down the stairs with a bag.  Patino asked appellant if he needed any
help, and appellant started to go back up the stairs.  Patino asked appellant, AIs there anything I can do for you?@ Appellant came back down the stairs. 
Patino testified that appellant Acame on top@ of
her and pushed her.  When appellant
pushed Patino, the bag he was carrying hit her.  Patino said the bag was Ahard.@ 
Patino stated that she lost her balance when appellant pushed her and
that she fell.  Patino was able to catch
herself with her hands.

Patino
testified that she called for help on her radio.  Appellant told Patino to Ashut up@ and not to say anything or he would Acome back and hurt [her].@ Appellant left the church, and Patino
followed appellant and asked him to stop. 
Some other workers from the church came to help Patino and tried to stop
appellant.  Appellant then stopped at
the request of Dale Pride, the facility manager at the church.  Patino said that appellant gave Pride the
bag, which contained a VCR from the church. 
Appellant apologized for taking the VCR, and Pride allowed appellant to
leave. 

Patino
testified that, while she and Pride were walking back to the church, she told
Pride she did not feel well because appellant had pushed her.  Patino stated that she had bruises on her
wrist, shoulder, and leg as a result of appellant pushing her.  Patino said that, because of the injury to
her wrist, she did not have strength to perform her duties at work. 

Pride
testified at trial that, on April 30, he was in his office around lunch when he
heard Patino cry for help over the radio. 
Pride got up and ran down the hall. 
Pride said that he was concerned because Patino was working in the
preschool area of the church where children were present attending the church=s parent=s day out program.  Pride saw
Patino and other custodians following someone. 
Pride caught up with them and asked what was the problem.  The custodians pointed out appellant
carrying the bag.  Pride called for
appellant to stop, and appellant stopped and returned to Pride.  Appellant gave Pride the bag which contained
a VCR from the church.  Appellant told
Pride he was sorry, that he Adidn=t mean to take it,@ and that he was just hungry. 








Pride
testified that he felt sorry for appellant and that he told appellant he would
let him go if appellant promised to never return to the church.  Pride stated that, while walking back to the
church, he noticed that Patino was Areal shakey and very traumatized.@  Pride said that he saw the
swelling in Patino=s
wrist and that he realized there was contact between the two.   Pride decided to call the police.  Pride then went to look for appellant.  Pride testified that he found appellant by
the bus line and that he kept appellant in sight while talking to the police on
the telephone.  Pride said that
appellant went into a Jack-in-the-Box restaurant where he was taken into
custody by the police.              Appellant testified at trial that on
the day of the offense, he was homeless and living on the streets.  Appellant went to look for work and for
assistance from churches. Appellant stated that he went to two churches for
assistance, but that he was told he was not eligible because his identification
indicated he Awasn=t in that zip code.@   Appellant then went to the
Wilshire Baptist Church seeking assistance. 
Appellant did not see anyone in the church so he went up to the second
floor to A[l]ook for opportunity.@ 
Appellant said that he was very hungry and that he did not have any
money. 

Appellant
testified that he saw the VCR and that he thought he could sell it and get some
food.  Appellant testified that he put
the VCR into a plastic bag and started to leave the church.  Appellant went back downstairs where he saw
Patino.  Patino asked appellant if she
could help him.  Appellant said that he
kept going toward the door and tried to hurry and get out of the church.   Appellant testified that Patino Aslid over@ and tried to block his path. 
Appellant said that he might have Aaccidently bumped into@ Patino as he tried to leave the church.  Appellant testified that outside the church several people were
following him and that he decided to stop. 
Appellant put the bag down and apologized.  Appellant said that Pride took the bag and left.  Appellant testified that he was later
arrested at Jack-in-the-Box.  

A person
commits the offense of robbery if, in the course of committing theft and Awith intent to obtain or maintain control of
the property, he:  intentionally,
knowingly, or recklessly causes bodily injury to another.@  TEX.
PENAL CODE ANN. ' 29.02(a)(1) (Vernon 2003).  Appellant specifically argues that the
evidence is factually insufficient to show that he caused bodily injury to
Patino.  








Patino
testified that appellant pushed her while trying to leave the church with the
VCR.  Patino said that she suffered
injuries to her wrist, shoulder, and leg. 
Appellant testified that he accidently bumped into Patino.  Appellant contends that the evidence is
factually insufficient because of the conflicting testimony.  Appellant argues that Patino=s version of the event is Aillogical@ and that he had Aneither motive nor cause to harm@ Patino.   The jury is the sole
judge of the credibility of the witnesses and the weight to be given their
testimony.  TEX. CODE CRIM. PRO. ANN.
arts. 36.13 & 38.04 (Vernon 1979 and 1981).  It is the exclusive province of the jury to reconcile conflicts
in the evidence.    Wesbrook v. State,
29 S.W.3d 103 (Tex.Cr.App. 2000), cert. den=d, 532 U.S. 944 (2001).  Viewing
all of the evidence, we do not find that the verdict is so contrary to the
overwhelming weight of evidence as to be clearly wrong and unjust.  Clewis v. State, supra.  Appellant=s first issue on appeal is overruled.

In his
second issue on appeal, appellant complains that the trial court erred in
admitting Aback door hearsay.@  We
review the trial court=s
decision to admit evidence under an abuse-of-discretion standard.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex.Cr.App.2000);  Montgomery v.
State, 810 S.W.2d 372, 391 (Tex.Cr.App.1991).  A trial court does not abuse its discretion when its ruling is
within the zone of reasonable disagreement.  
Montgomery v. State, supra.  
In reviewing whether testimony constitutes indirect hearsay, we examine
how strongly the content of the out‑of‑court statement can be
inferred from the context.  Head v.
State, 4 S.W.3d 258 (Tex.Cr.App.1999). 
We  must decide whether the
evidence compels an inescapable conclusion that the testimony is being offered
to prove the substance of an out‑of‑court statement.  Head v. State, supra.  The trial court=s decision to admit testimony objected to on
the basis of Aback door hearsay@ is not to be disturbed unless it is evident
from the record that the sole intent in introducing the evidence was to prove
the content of an out‑of‑court statement.  Gurka v. State, 82 S.W.3d 416 (Tex.App. - Austin 2002, pet=n ref=d).








Appellant
contends that Pride=s
testimony concerning his decision to call the police after observing Patino=s arm is Aback door hearsay.@  The trial court ruled that
Pride could testify Ato his
state of mind that caused him to change his behavior@ and instructed Pride not to Ago into the conversation that [he] actually
had.@  The
State then asked Pride what he learned had happened.  Pride responded that Patino showed him her wrist.  The trial court sustained appellant=s objection as to Aany conversation,@ but ruled that Pride could testify Aas to why he changed his mind about the way
to proceed.@ 
Pride then testified that he saw the swelling on Patino=s wrist and realized that there was contact
between appellant and Patino.  Pride
said that he decided to call the police and file a report.  We find that Pride=s testimony was not hearsay because it was
admitted to show why Pride decided to call the police and not to show that
appellant injured Patino.  See
TEX.R.EVID. 801(d).  Moreover, the
record shows that Patino testified that she told Pride that she did not feel
well because appellant had pushed her.  
Gurka v. State, supra. 
Appellant has not shown that the trial court abused its discretion in
admitting the evidence or that the sole intent in introducing the evidence was
to prove the content of Patino=s statement.  Appellant=s second issue on appeal is overruled. 

In his
third issue on appeal, appellant argues that the trial court erred in admitting
a partial Geesa[1]
instruction on reasonable doubt.  In Paulson
v. State, 28 S.W.3d 570 (Tex.Cr.App.2000), the court overruled  Geesa to the extent that it required
trial courts to instruct juries on the definition of reasonable doubt.  The court stated that Athe better practice is to give no definition
of reasonable doubt at all to the jury.@  Paulson v. State, supra at
573.  The court found that it would not
be reversible error to include the definition if both parties agreed to provide
it.   Paulson v. State, supra at
573.

The trial
court did not include the full definition of reasonable doubt as set out in Geesa.  The trial court instructed the jury, AIt is not required that the prosecution prove
guilt beyond all possible doubt; it is required that the prosecution=s proof excludes all >reasonable doubt= concerning the defendant=s guilt.@  Appellant argues that, because
the trial court included the partial Geesa instruction on reasonable
doubt and because the parties did not agree to submit the instruction to the jury,
the trial court committed reversible error. 
We disagree.








Paulson criticizes the definition of reasonable
doubt as set out in Geesa. 
However, Paulson does not specifically discuss or criticize Geesa=s distinction between reasonable doubt and
possible doubt. Vosberg v. State, 80 S.W.3d 320, 324 (Tex.App. - Fort
Worth 2002, pet=n ref=d).   The language in question, AIt is not required that the prosecution prove
guilt beyond all possible doubt;  it is
required that the prosecution=s proof excludes all >reasonable doubt= concerning the defendant=s guilt,@ merely notes that reasonable doubt does not
mean possible doubt.  Vosberg v.
State, supra at 324.  We find that
it was not error to include the instruction given in this case.  See Brown v. State, 91 S.W.3d
353 (Tex.App. - Eastland 2002, no pet=n); Carriere v. State, 84 S.W.3d 753 (Tex.App. - Houston [1st
Dist.] 2002, pet=n ref=d); Vosberg v. State, supra.[2]  Moreover, we note that appellant did not
object to the trial court=s inclusion of the instruction. 
Almanza v. State, 686 S.W.2d 157 (Tex.Cr.App.1985).  Therefore, assuming without agreeing that it
was error to include the definition, appellant has not shown that he suffered
egregious harm as a result of any error.  
Almanza v. State, supra. 
Appellant=s third issue on appeal is overruled.








In his
fourth issue on appeal, appellant contends that the trial court erred in
submitting an instruction in its charge to the jury that commented upon the
weight of the evidence.  Appellant
specifically complains of the trial court=s instruction that a person=s intent Amay be
inferred by acts done, words spoken, or by both.@  In Garcia v. State, 919
S.W.2d 370 (Tex.Cr.App.1994), the Court of Criminal Appeals considered whether
the trial court erred in charging the jury that Aintent or knowledge may be inferred by acts done or words spoken.@    In
Garcia, the court did not specifically hold that the phrase was
erroneous, but assumed, arguendo, that it was and conducted a harm
analysis.  Garcia v. State, supra
at 396.  Citing  Garcia, several courts of appeals
have found the phrase to be error.  See
Ward v. State, 72 S.W.3d 413 (Tex.App. - Fort Worth 2002, no pet=n); Lam v. State, 25 S.W.3d 233
(Tex.App. - San Antonio 2000, no pet=n); Peterson v. State, 942 S.W.2d 206 (Tex.App. - Texarkana
1997, pet=n ref=d); but see Brown v. State, 92 S.W.3d 655 (Tex.App. -
Dallas 2002, pet=n granted) (holding that the instruction did
not comment on the weight of the evidence). 
         Appellant did not object
to the charge; and, therefore, he must show egregious harm as a result of any
error.  Almanza v. State, supra.  We find that appellant has not shown he
suffered egregious harm as a result of any error in admitting the
instruction.   Cook v. State, 99
S.W.3d 310 (Tex.App. - Eastland 2003, no pet=n).  Appellant testified that he
accidently bumped into Patino, and Patino testified that appellant
intentionally pushed her.  Although
appellant=s intent was at issue, the issue of intent
turned on the jury=s
determination of the credibility of the witnesses.  Appellant=s fourth issue on appeal is overruled.

The
judgment of the trial court is affirmed.

 

TERRY
McCALL

JUSTICE         

 

September 18, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]Geesa v. State, 820 S.W.2d 154 (Tex.Cr.App.1991).





[2] We note that in Phillips v. State, 72 S.W.3d
719 (Tex.App. ‑ Waco 2002, no pet=n),
and Rodriguez v. State, 96 S.W.3d 398 (Tex.App. ‑ Austin 2002, pet=n ref=d), the trial
courts gave a portion of the Geesa definition of reasonable doubt over
the defendants= objections.  In
each case, the court of appeals found that it was error to include the
definition over objection but found the error harmless.