# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00239-CR

**Stephen Gurka, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 002350, HONORABLE JON N. WISSER, JUDGE PRESIDING

Appellant Stephen Gurka was found guilty of aggravated sexual assault of a child. *See* Tex. Pen. Code Ann. § 22.021 (West 2002). The trial court sentenced the appellant to twenty-eight years' imprisonment. The appellant argues that the trial court erred in admitting the testimony of three witnesses for the State. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was brought following the delayed outcry by a victim of sexual abuse. C.B. alleged that while her mother was married to Stephen Gurka, between late 1992 and February 1995, Gurka sexually assaulted her. C.B., who was fifteen-years old at the time of trial, testified that starting when she was around five or six years old and continuing while he was married to her mother, Gurka molested her on four occasions. C.B. testified that Gurka threatened to kill anyone she told about the incidents. Her mother divorced Gurka in 1995. C.B. testified that about two years after

the divorce, when she was twelve years old, she told her cousin Reanell and her sister that Gurka had molested her. Later, she also told her friend Brittany. According to her testimony, C.B. begged all three girls not to tell anyone her "secret" because she was still afraid that Gurka would kill anyone she told; she was especially fearful that Gurka would harm her mother. Her cousin Reanell eventually told their grandmother about a year later. By this time, C.B.'s mother had married Leslie Wuensche. The grandmother never discussed the matter with C.B. but reported the information to Wuensche, who ultimately confronted his stepdaughter about the abuse. After C.B. admitted to her new stepfather that Gurka had molested her, Wuensche contacted the police.

C.B. was approximately thirteen years old when the matter was reported to law enforcement authorities; between six and seven years had elapsed from the first alleged assault. At trial, the State had to combat the obvious prejudice associated with the victim's long delay in reporting the abuse to an adult and the absence of any physical evidence.[1] In its case-in-chief, the State attempted to explain the delay. C.B. testified that she had been fearful that Gurka would harm her mother if she told anyone and that she was still afraid of Gurka. She also stated that she waited until her mother divorced Gurka before she told anyone about the abuse. The State emphasized that C.B. told her sister, cousin, and friend about the events several years before the report to authorities,

---

[1] For example, in his opening statements to the jury, defense counsel stated:

I think what this case really will come down to basically is what we call a swearing match. Also known as a he said/she said. And I hope that after you hear all of this evidence that basically all the evidence will show is that it is nothing more than a he said/she said of an event [sic] that allegedly happened years ago and where there will be no physical evidence at all.

2

but begged them not to tell anyone.[2]  Both her cousin Reanell and her friend Brittany testified that C.B. had revealed her "secret" to them and that they had kept the information confidential until Reanell finally told her grandmother.

Gurka objected to the testimony regarding C.B.'s conversations with Reanell, Brittany, and Wuensche on the grounds of hearsay.  Gurka's specific objection was that the testimony would constitute improper "backdoor hearsay" condemned by the court of criminal appeals in *Schaffer v. State*, 777 S.W.2d 111 (Tex. Crim. App. 1989).  The State responded that it did not seek to elicit from the three witnesses what C.B. told them; indeed, C.B. had already testified as to the conversations with each witness.  Rather, the State sought to introduce the testimony to prove that the conversations had taken place.  The judge allowed the testimony for the most part.  The State in its closing argument emphasized that it had provided sufficient evidence to explain the delayed outcry:

> So [C.B.] stays silent.  And when does she tell about this abuse?  Later when she feels safer, when her mother has divorced Stephen Gurka and she is away from him.  And even when she does tell, who does she tell?  A cousin two years her senior, somebody she trusts, and another little girl that is a friend of hers in her same peer group.  And what does she tell them when she tells them about this abuse?  What does she ask them?  She asked them–she begs them to please keep this a secret. Please don't tell.

And later, the State continued,

> And we brought you as many witnesses as we could.  We brought you [C.B.].  We brought you the cousin Reanell.  We brought you Brittany.  We believe we showed that there was a chain with this secret, and this secret made it to grandma and that eventually the same secret made its way to [C.B.]'s stepfather Les [Wuensche].

---

[2] C.B.'s sister did not testify at trial and so the disclosure to her is not an issue in this appeal.

The State also presented expert testimony by Vivian Heine regarding typical child sexual assault cases and factors contributing to delayed outcries. Heine is a licensed social worker with twenty-six years of experience who directs a treatment center for victims of violent crimes and their families. Heine testified that she had worked with approximately 7000 sex offenders and an equal number of sexual assault victims. She pointed out some factors that contribute to delayed disclosure by young victims of sexual abuse. Heine testified that a child victim typically reports an incident within twenty-one months; C.B. waited some two years after Gurka left the home to tell her cousin. Heine testified, however, that the age of the child and feelings of shame and embarrassment, coupled with fear of the perpetrator, could contribute to the child's decision not to reveal the abuse until much later. She also stated that it was common for children between the ages of twelve and fourteen to reveal the abuse to someone in their peer group rather than to an adult.

The defense called Gurka's mother and sister-in-law, who testified that during Gurka's marriage to C.B.'s mother, C.B. did not appear afraid of him and that the two had a good relationship. The defense put on no other witnesses.

The jury found Gurka guilty of aggravated sexual assault. In three points of error, Gurka complains that the judge's evidentiary rulings were erroneous because the witnesses' testimony constituted backdoor hearsay.

**DISCUSSION**

4

We review the trial court's decision to admit evidence under an abuse of discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). As long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court will not reverse the ruling. *Montgomery*, 810 S.W.2d at 391.

"Hearsay" is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). "Statement" is defined as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression." Tex. R. Evid. 801(a). The court of criminal appeals in *Schaffer* clarified that even if the out-of-court statement itself is not introduced, the hearsay rule may apply if the testimony allows the jury to ascertain the purport of the statement. *Schaffer*, 777 S.W.2d at 113-15. In that case, Schaffer defended against the charge of possession of a controlled substance by claiming he was a police informer for an officer named Jimmy Seals. *Id.* at 112. Apparently surprised by the testimony, the State called as a rebuttal witness a narcotics investigator who testified that he had talked to Seals that morning. *Id.* at 113. The State then asked the investigator whether, as a result of his conversation with Seals, he would ask the State to drop the charges against Schaffer. *Id.* The investigator responded, "No, sir." *Id.* Neither the State nor Schaffer subpoenaed Seals for trial. *Id.*

On appeal, Schaffer argued that while the investigator did not testify as to what Seals told him on the phone, the exchange on the stand allowed the jury to infer the import of the out-of-court statement. *Id.* The court agreed that by allowing the testimony, the trial court had, in effect

5

admitted hearsay testimony from Seals because the investigator's answer indirectly conveyed the substance of Seals's out-of-court statement. *Id.* at 114. The court opined that

> where there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short "statement" as defined in Tex. R. Civ. Evid. 801(a) . . . necessarily includes *proof* of the statement whether the proof is direct or indirect.

*Id.*

Important to *Schaffer*'s holding was the court's conclusion that the testimony served no purpose other than to disprove the defendant's assertion that he had been working as an informer for Jimmy Seals. The court emphasized that the investigator had been recalled as a rebuttal witness only to disprove the defendant's claim. Given these facts, the court concluded, "[t]here is no doubt that the State's *sole intent* in pursuing this line of questioning was to convey to the jury that Seals had told [the investigator] that appellant was not an informant." *Id.* at 114 (emphasis added).

In a subsequent case, the court of criminal appeals rejected the asserted claim of "backdoor hearsay" and emphasized that whether testimony constitutes indirect hearsay as found in *Schaffer* turns on the facts of each case as they are developed at trial. *See Head v. State*, 4 S.W.3d 258, 261-63 (Tex. Crim. App. 1999). The court explained that whether testimony constitutes impermissible hearsay "turns on how strongly the content of the out-of-court statement can be inferred from the context." *Id.* at 261. The court must decide whether the evidence compels an "inescapable conclusion" that the testimony is being offered to *prove* the substance of an out-of-court statement. *Id.* at 261-62 (quoting *Schaffer*, 777 S.W.2d at 114); *see also id.* at 262 n.3 (noting that

6

"the focus of the inquiry should remain on the [question of] whether or not the disputed testimony is being offered to *prove* an out-of-court statement"). Read together, *Head* and *Schaffer* dictate that, as with all evidentiary determinations, the trial court's decision to admit testimony objected to on the basis of backdoor hearsay is subject to an abuse of discretion standard. That discretion is not to be disturbed unless it is evident from the record that the sole intent in introducing the evidence was to prove the contents of an out-of-court statement.

With this in mind, we turn to Gurka's argument that the testimony of Reanell, Brittany, and Wuensche was introduced solely to prove the contents of C.B.'s out-of-court statements.

### *Testimony of the Cousin and Friend*

In his first point of error, Gurka contends that by questioning C.B.'s cousin regarding C.B.'s first disclosure of the offense, the prosecutor was allowed to indirectly elicit C.B.'s out-of-court statements. Before Reanell's testimony, the defense raised its concern that she was about to testify to out-of-court statements. The prosecution argued, "Your Honor, I believe that this witness can testify without saying what the victim told her as to what the demeanor was of the victim." Defense counsel agreed that such demeanor testimony would be admissible. The court remained concerned and exhorted Gurka's counsel to object "if you think they stray into something improper."

Reanell testified that she asked C.B. "what Steve had done to her" and acknowledged that C.B. told her that "something bad" had happened between her and Stephen Gurka. She testified that C.B. "seemed very scared" and "upset" and wanted her to keep their conversation a "secret."

7

Reanell testified that about a year or two later she revealed C.B.'s secret to their grandmother. Gurka made no objection to any of her testimony. He has failed, therefore, to preserve error as to Reanell's testimony. *See* Tex. R. App. P. 33.1; *Hitt v. State*, 53 S.W.3d 697, 707 (Tex. App.—Austin 2001, pet. ref'd).

In his second point of error, Gurka raises the same argument with respect to the prosecutor's direct examination of C.B.'s friend Brittany. Reminding Brittany not to repeat any of C.B.'s statements, the prosecution asked whether she and C.B. had ever had a conversation about an "event" that C.B. wished to keep "secret." While Gurka complains about most of Brittany's testimony, much of that testimony was admitted without objection. By the time Gurka objected, Brittany had testified without objection that she and C.B. had had a discussion about an "event or events that [C.B.] wanted [her] to keep secret," that the conversation had occurred approximately three years earlier, and that the subject of the conversation was about something "bad" that had happened to C.B. that involved an adult. She also testified that C.B. was upset as she related the secret. Gurka only objected when the prosecutor twice attempted to ask Brittany whether C.B. told her the adult's identity; the court sustained each objection.

To preserve error for review, a timely and specific objection must be made and followed by an adverse ruling. *Hitt*, 53 S.W.3d at 707. While Gurka did object to the questions that sought to elicit the name of the adult that had molested C.B., his objections were sustained. Gurka failed to object to any of Brittany's testimony before the name of the perpetrator was elicited; he has therefore failed to preserve error as to Brittany's earlier testimony.

8

Even if Gurka had preserved error as to either Reanell or Brittany's testimony, their testimony did not convey any new facts to the jury. *See id.* at 708 (stating that the improper admission of evidence is not reversible error when substantially the same facts are proven by unobjected-to testimony).[3] C.B. had already testified that she told Reanell and Brittany that Gurka had molested her. Gurka made no objection to C.B.'s testimony. Furthermore, the fact that the jury had already heard C.B.'s testimony weakens Gurka's contention that the State's sole intent in questioning the cousin and the friend was to prove the contents of C.B.'s statements. *See Head*, 4 S.W.3d at 262 (concluding that the trial court could have reasonably determined that the State's intent in questioning a witness was not solely to convey an out-of-court statement). The State argues that additional reasons existed for putting the witnesses on the stand. Their testimony was relevant to proving the *fact* that the conversations had occurred rather than the *substance* of the conversations. The delayed outcry to authorities made relevant C.B.'s earlier reports of the molestation to her cousin and friend. The long delay removed the possibility of any physical evidence linking Gurka to the acts and weakened the credibility of C.B.'s claim. Five or six years had passed before the victim told Wuensche about the assault, and then she revealed the incident only after her stepfather confronted her. Thus, the prosecution needed to establish the earlier disclosures both to

---

[3] Of course, this proposition assumes that the opponent of the evidence has made an objection, which Gurka failed to do, and that the trial court has overruled it. *See Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd ). If the court's ruling was incorrect, the error is not reversible where the same evidence has already been introduced, regardless of whether the other evidence was introduced by the defendant or the State. *Id.*

9

explain C.B.'s delay in coming forward and to relate to the jury how the information ultimately came to light.

Evidence substantiating C.B.'s testimony that she had earlier told her cousin and friend about the molestation helped to explain the fear that delayed the official outcry. The *fact* that the conversations had occurred meant that C.B. told two peers, with whom she felt comfortable, about the abuse long before she told an adult. The State provided evidence that children feel more comfortable making such disclosures to their peers rather than to adults. Also, C.B. testified that she did not report the abuse because Gurka threatened to kill anyone she told. Reanell and Brittany confirmed that C.B. told them to keep what she had said a secret, and they did for some time. As the complained-of testimony was neither new nor offered to prove the substance of C.B.'s out-of-court statement, the trial court did not abuse its discretion in admitting it. Accordingly, we overrule appellant's first and second points of error.

### *Testimony of Leslie Wuensche*

The prosecutor next called Leslie Wuensche to the stand. The prosecutor questioned the stepfather about C.B.'s conversation with him regarding the abuse, and Gurka raised the same hearsay objection. The relevant portions of his direct examination are as follows:

[Prosecutor]   Okay. How did you approach [C.B.]?

[Wuensche]   Well, I know that kind of sounds silly, but I didn't know how to actually approach her because I knew she did not want anybody to know and I knew she probably wouldn't tell me. So [C.B.] is known for talking in her sleep, so I – I had a – called her in the room by

10

herself so none of her brother or sister [sic] could – could hear us. And I had told her that one night she was talking in her sleep and I heard her mention Steve's name. And I said – kind of told her – I said, "Did he do anything to you?" She really wouldn't answer. And I said, "Well, you mentioned something about him touching you and doing stuff," and she just –

It was only at this point that defense counsel objected on the grounds of hearsay, arguing that the prosecutor's question and Wuensche's response had the effect of informing the jury as to what C.B. told her stepfather. The judge overruled the objection and questioning resumed.[4] Gurka's late objection did not preserve error as to the above testimony. *See Miles v. Ford Motor Co.*, 922 S.W.2d 572, 591 (Tex. App.—Texarkana 1996) (objection made after testimony given is too late), *rev'd in*

---

[4] The State then elicited the following testimony:

[Prosecutor]      Let me clarify what I'm asking you. I need for you to basically – this is going to sound silly, but tell us your half of the conversation. What kind of questions did you ask her?

[Wuensche]  I just basically asked like where he had touched her and with what.

[Prosecutor]      Okay. And after asking her that, after having a conversation with [C.B.] – well, first of all, after hearing – I'm sorry, having a conversation, what response did you take?

[Wuensche]  I guess – well, first off, I was shocked and, I guess, upset. I just – it was just a surprise, I guess.

Gurka argues on appeal that this testimony was impermissible backdoor hearsay inasmuch as it informed the jury the purport of what C.B. told Wuensche. Gurka failed to object and has therefore not preserved the error for review. *See* Tex. R. App. P. 33.1.

*part on other grounds*, 967 S.W.2d 377 (Tex. 1998). In the interests of justice, however, we will discuss the merits of Gurka's third issue.

The State maintains that Wuensche's testimony, like Reanell's, was necessary to establish how the stepfather and eventually law enforcement authorities learned of the assaults some six years after they first occurred. The State also points out that C.B. had already testified that when Wuensche confronted her with the information from her grandmother, she confirmed that what he had heard was "true." This fact distinguishes the instant case from the facts in *Schaffer*.[5] *See Schaffer,* 777 S.W.2d at 114.

We are not persuaded by the State's alternative argument that any hearsay testimony from Wuensche is admissible on the basis of the "outcry witness" provisions. *See* Tex. Code Crim.

---

[5] The State also attempts to analogize the need for Wuensche to testify about how he received the information from C.B. to a police officer's need to testify as to out-of-court information that led him to the scene of a crime. The *Schaffer* court acknowledged that "[a]lmost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to 'information received.'" *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). The court rejected the State's attempt to analogize the investigator's testimony regarding Jimmy Seals to such testimony. The court distinguished information provided by a testifying officer as to how he "happened upon the scene" on the grounds that in those cases "[s]uch testimony was necessary for the jury's understanding of the events and was not introduced for the truth of any implications." *Id.* at 115.

Here, the State's attempt to analogize Wuensche's testimony to that of a testifying officer would enlarge the scope of the exception to encompass lay witness testimony. The State cites no authority to justify such an expansion; moreover, there is a statutory provision in place that allows hearsay testimony describing alleged child abuse in cases such as the instant one. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2002). Had the State properly availed itself of article 38.072 in the instant case, it would have been permitted to introduce C.B.'s hearsay statements to Wuensche. The availability of this provision and the limited nature of the exception recognized in *Schaffer* persuade us to reject the State's rationale for admitting the statements.

12

Proc. Ann. art. 38.072 (West Supp. 2002). Article 38.072 makes admissible hearsay statements describing alleged child abuse and assault offenses. Article 38.072 applies to "statements that describe the alleged offense that "(1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person,18 years of age or older, other than the defendant, to whom the child made a statement about the offense." *Id.* § 2(a) (West Supp. 2002). Strict compliance with the conditions of article 38.072 is necessary if a party wishes to introduce such statements. *Nelson v. State*, 893 S.W.2d 699, 702 (Tex. App.—El Paso 1995, no pet.) (stating that "the burden is upon the State as the proponent of the hearsay evidence to establish compliance with the mandatory provisions of Article 38.072 in order for the testimony to be rendered admissible"); *see also Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). If a party intends to admit hearsay testimony from the child victim of sexual abuse describing the events, it is required to notify the adverse party of its intention on or before fourteen days prior to trial and to provide the name of the outcry witness and a written summary of the statement. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b) (West Supp. 2002).

In the instant case, the State named the victim's mother, not her stepfather, as the outcry witness. The State never called the mother to testify during the guilt-innocence stage of the trial. Instead, the State indicated to the judge that the stepfather was the outcry witness and that he was going to testify as such. Now the State urges this Court to overrule Gurka's point of error regarding Wuensche by asserting that the trial judge could have admitted the testimony on the basis of article 38.072. We refuse to sanction the State's failure here to comply with the mandatory notice

13

provisions of article 38.072; Wuensche was not named as the outcry witness. While the Texas Legislature deemed outcry witness testimony an exception to the hearsay rule, it also imposed procedural safeguards in order to protect defendants from improper use of the exception. As the State abused the exception, we reject article 38.072 as a basis for admitting Wuensche's testimony.

Based on our review of the record, however, the trial court did not err in admitting the statements. We are not persuaded that the prosecutor's sole intent in having Wuensche testify was to prove the contents of C.B.'s statements. *See Head*, 4 S.W.3d at 262. Like the testimony of C.B.'s cousin and friend, Wuensche's testimony provided no new information to the jury; C.B. had testified about her conversation with Wuensche without objection. In addition, the fact that there was an unusually long time period between the alleged offenses and the police investigation provided a heightened need for the prosecution to explain all of the elements in this unfortunate story. Wuensche provided information to the jury regarding how the young child's secret finally made its way to the authorities. This aspect of his testimony, coupled with the fact that any inference to the jury would have consisted of evidence already admitted, distinguishes the instant case from *Schaffer* and convinces us that the trial court did not abuse its discretion in allowing Wuensche to testify regarding his conversation with the victim. *See Schaffer,* 777 S.W.2d at 114 (concluding that the "State's *sole intent* in pursuing this line of questioning was to convey to the jury" the substance of an out-of-court statement). Furthermore, even if the trial court had erroneously allowed the testimony, there would be no reversible error because C.B.'s own testimony about her conversation with her stepfather had

14

been received without objection. *See Hitt*, 53 S.W.3d at 708. We overrule Gurka's third point of error.

## CONCLUSION

For the reasons given, we overrule appellant's complaint about the admission of backdoor hearsay and affirm the trial court's judgment.

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Onion[*]

Affirmed

Filed: April 4, 2002

Publish

*   Before John F. Onion Jr., Presiding Justice (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).